## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRETT STEELE<br>6116 Beech Tree Drive<br>Alexandria, Virginia | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.:_____ |
| HON. JOHN M. McHUGH,<br>Secretary of the Army,<br>United States Department of the Army,<br>1400 Defense Pentagon<br>Washington, DC 20301 | ) ) ) ) ) ) | JURY DEMANDED |
| Serve:  Hon. Eric H. Holder, Jr.,<br>Attorney General of the United States, or<br>c/o Designated Representative<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530-0001 | ) ) ) ) ) ) ) | |
| Serve:  Hon. Ronald C. Machen, Jr.,<br>United States Attorney for the District of Columbia,<br>or c/o Designated Representative<br>United States Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, DC 20530-0001 | ) ) ) ) ) ) | |
| Serve: John M. McHugh, Secretary of the Army,<br>United States Department of the Army,<br>1400 Defense Pentagon<br>Washington, DC 20301 | ) ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

**COMES NOW** the Plaintiff Brett Steele, by and through his undersigned counsel, and

sues Honorable John M. McHugh in his official capacity as Secretary of the Army for the cause

of action stated as follows:

**NATURE OF THE CASE**

1.      Plaintiff Brett Steele ("Plaintiff" or "Mr. Steele") brings this civil action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* for relief from discrimination based on of his age (DOB: xx-xx-1963), engagement in prior protected activity, being subjected to a hostile work environment during the course of his employment with the National Defense University, College of International Security Affairs ("the University"), and being constructively discharged from his position.

**PARTIES**

2.      Plaintiff Brett Steele was an employee of the University at all times relevant.  He resides at 6116 Beech Tree Drive, Alexandria, Virginia 22310.  Mr. Steele is a United States citizen.

3.      Defendant John McHugh ("Secretary McHugh" or "Defendant") is being sued in his official capacity as Secretary of the United States Department of the Army ("the Agency"). Secretary McHugh's duties include responsibility for the United States Department of the Army, including the National Defense University.  The discriminatory and retaliatory events giving rise to this case occurred within the University.

4.      Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed negligent, discriminatory acts and/or omission against Plaintiff within the course and scope of their employment.  Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## JURISDICTION

5.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

6.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

7.      Venue is proper in the District of Columbia under 28 U.S.C. § 1331 and 29 U.S.C. § 1402 because a substantial part of the acts and omissions that give rise to the claims in this Complaint occurred in the within the District of Columbia.

8.      Venue is further proper because the National Defense University, College of International Security Affairs is headquartered at 300 Fifth Avenue, S.W., Fort Lesley J. McNair, Washington, DC 20319-5066.

## EXHAUSTION OF REMEDIES

9.      Plaintiff has exhausted all of his administrative remedies.

10.     Plaintiff timely filed an informal EEO complaint on or about July 20, 2011 and filed a formal EEO Complaint on or about November 2, 2011, due to being subjected to disparate treatment based on age (DOB: xx-xx-1963) and prior EEO activity as well as being subjected to a hostile work environment.

11.     The Defendant issued its Final Agency Decision or May 10, 2013, which provided Plaintiff with the right to file a federal complaint within 90 days of receipt of the Final Agency Decision.

3

12.     Plaintiff hereby time files this action within 90 days after receipt of that notice and brings this action for discrimination on the basis of age (DOB: xx-xx-1963), retaliation (prior protected activity) and hostile work environment (age and retaliation).

## FACTS

13.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

14.     In August 2010, Dr. Steele accepted an offer of employment to be an Associate Professor of the International Security Affairs for National Defense University ("the University"), AD-1701-01.

15.     At all relevant times, Dr. Alexandra Bolanos, Associate Professor, (no known EEO activity, DOB: xx-xx-1976) was Dr. Steele's first level supervisor.

16.     At all relevant times, Dr. Querine Hanlon, Dean of Academic Affairs, (no known EEO activity, DOB: xx-xx-1969) was Dr. Steele's second level supervisor.

17.     At all relevant times, Colonel Michael Bell, Chancellor, (no known EEO activity, DOB: xx-xx-1961) was Dr. Steele's third level supervisor.

18.     Upon information and belief, Dr. Hanlon gave preferential treatment to University employees under the age of 40.

19.     The College of International Security Affairs ("CISA") is the University's focal point for interagency and international security education, promoting a common understanding among agencies, nations, and military services.  Graduates from CISA obtain a The College presents Master of Arts Degree in Strategic Security Studies with concentrations in Counterterrorism, Conflict Management of Stability Operations, Homeland Security and Defense, and International Security Studies.

20.     On or about February 17, 2011, Dr. Steele attended a meeting where Dean Corrine Hanlon inferred that Dr. Steele should not use the concept of profit and to not use it in a mathematical form in his Strategic Thought course.

21.     Dr. Steele modified his teaching instruction to conform to Dean Hanlon's request.

22.     Later, Dr. Steele's Supervisor, Dr. Alejandra Bolanos, Chair of the International Security Studies Department, approached him and alleged that there were rumors of student complaints concerning his teaching.

23.     Out of concern, Dr. Steele approached Colonel Michael Bell, Chancellor of the College of International Security Affairs, regarding his conversation with Dr. Bolanos about the alleged student complaints because Dr. Bolanos told Dr. Steele that the alleged complaints were given to Colonel Bell.

24.     Colonel Bell stated that he was not aware of any student complaints, but that there were problems with the syllabus for the Strategic Thought course.  Colonel Bell suggested that a meeting occur between Dr. Steele and all the other professors on March 18, 2011, to discuss the problems with the syllabus.

25.     On or about March 18, 2011, Dr. Steele attended the scheduled meeting, but when he called upon his colleagues to join him, they responded that they had not been invited.  Thus, Dr. Steele attended the meeting alone.

26.     When Dr. Steele arrived at the meeting, the only participants were Colonel Bell, Dr. Bolanos and Dean Hanlon.  No other professors were present.  Dr. Steele questioned about using any reference to economics in his Strategic Thought course.

27.     Shortly after that meeting began, Colonel Bell began to scream and yell at Dr. Steele.  Colonel Bell's abusive and unprofessional conduct toward Dr. Steele was without

5

provocation and caused Dr. Steele a great amount of emotional distress and humiliation.

28.     After the March 2011 meeting, Dr. Steele again adjusted his teaching method to accommodate the request about the use of economics.

29.     On or about May 18, 2011, Dr. Steele was called to attend a meeting called by Dean Hanlon, and Dean Bolanos and Dean Meyer were present.

30.     At the May 18, 2011 meeting, Dr. Steele was told by Dean Hanlon that he would be terminated and was issued a Notice of Termination.

31.     During the May 18, 2011 meeting, Colonel Bell ordered Dean Hanlon not to disclose the basis of the termination to Dr. Steele.  Dean Hanlon further told him that his position would be terminated at the end of the summer semester, which concluded on August 17, 2011.

32.     On or about August 2, 2011, at about 10:00 a.m., Dr. Steele received an email from Colonel Bell instructing Dr. Steele to meet him at his office at 11:00 a.m.  Colonel Bell did not respond to Dr. Steele's inquiry as to the purpose of the meeting.

33.     During the August 2011 meeting, Colonel Bell would not give Dr. Steele permission to sit down and ordered him to remain standing.  Eventually, Dr. Steele was allowed to sit while he took notes in order to be clear on Colonel Bell's instructions.  However, Dr. Steel ended the meeting and attempted to exit but was restrained as he tried to exit the meeting after Colonel Bell became belligerent.

34.     As Dr. Steele exited Colonel Bell's office after the August 2011 meeting, he was met with a group of security officials and Military Police Officers.

35.     Dr. Steele was immediately told to surrender his CAC card, office key and ID badge and was escorted by Dr. Deare, Mr. Meyer, and armed Military Police Officers to his office.

6

36.     After Dr. Steele removed his belongings from his office, he was then escorted outside of Lincoln Hall by the Military Police Officers.

37.     On or around August 2, 2011, Dr. Steele was placed on administrative leave without pay.

38.     The University never gave a reason to Dr. Steele as to why he was being singled out and subjected to adverse conduct such as proposing his termination and placing him on administrative leave.

39.     Soon after being publicly escorted from the University, Dr. Steele was placed on a Do Not Admit status for area military bases, which prevented him from meeting with the Agency's EEO counselor since the EEO counselor was located on an Army base.

40.     To initiate the EEO process with the Agency, Dr. Steele was required to meet the Agency EEO counselor at a location off of the base.

41.     The University failed to provide Dr. Steele with a written, annual performance evaluation during his employment with the University.

42.     The University also refused to provide Dr. Steele's then-students with course evaluations.

43.     Dr. Steele forcibly resigned from his position with the University on or around August 19, 2011.

### CAUSES OF ACTION

#### COUNT I
#### Age Discrimination in Employment Act of 1967,
#### 29 U.S.C. § 621 *et seq.*
#### (Employment Discrimination on the Basis of Age)

44.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

45.     The Age Discrimination in Employment Act makes it unlawful for an employer to take adverse action against an employee "because of such individual's age."  29 U.S.C. § 623(a).

46.     At all relevant times, Plaintiff was over the age of 40 (DOB: xx-xx-1963).

47.     The Defendant did not subject Associate Professors under the age of 40 to the same or similar adverse actions complained of throughout this Complaint.

48.     Associate Professors under the age of 40 were not terminated or forced to resign during the relevant time period.

49.     Specifically, four new faculty members (e.g., FF, EP, AN, JM and BS) under the age of 40 were hired shortly after August 2011.

50.     There were other Professors who performed at Dr. Steele's level and even below his level, who were younger than him.

51.     Younger Professors were not subject to the age discrimination to which Dr. Steele was subjected.

52.     Because of his age, Plaintiff suffered from many adverse employment actions, including that adverse actions complained of in this Complaint, as a direct result of Defendant's discriminatory treatment.

53.     Defendant's discriminatory treatment was intentional.

54.     As a direct and proximate cause of the Department's conduct alleged in this Complaint, Plaintiff suffered and continues for suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

55.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.     Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

b.     Declaratory and injunctive relief;

c.     Order the Defendant to institute a policy and procedure to be implemented against discrimination;

d.     Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

e.     Supervisory training for the supervisors at issue herein; and

f.     Such other and further relief as this Court deems just and proper.

## COUNT II
### Age Discrimination in Employment Act of 1967,
### 29 U.S.C. § 621 *et seq.*
### (Retaliation)

56.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

57.     Plaintiff regularly complained to his supervisors and filed complaints with the EEO office because of the unlawful, hostile and discriminatory and retaliatory treatment that he was being subjected to.

58.     On or about July 20, 2011, Plaintiff contacted the Agency's EEO office and filed an informal EEO complaint alleging discriminatory treatment by the Defendant, including Dean Hanlon, Colonel Bell and Dr. Bolanos.

59.     Plaintiff's supervisors were made aware of his informal EEO complaint.

60.     After engaging in the Agency's EEO informal complaint process, Plaintiff filed a formal complaint of discrimination and retaliation on or about November 2, 2011.

61.     The Agency investigated Plaintiff's EEO complaint from August 31, 2012 through October 31, 2012.

62.     After engaging in protected EEO activity, Plaintiff was subjected to adverse actions by the University when it subjected him to the adverse actin complained of herein, including when it harassed him about his teaching and teaching style, over scrutinized his work product, and proposed his termination and then forced him to resign and made him a "Do Not Admit."

63.     Similarly situated employees of the University (no prior EEO activity) were not subjected to the same adverse treatment or any adverse treatment despite the fact that their work and work product was similar or below Dr. Steele's work and work product.

64.     The University engaged in reprisal against Plaintiff because he engaged in protected EEO activity.

65.     The adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously engaged in protected EEO activity.

66.     Younger Professors were not subject to the retaliation that Dr. Steele was subjected.

67.     As a result of the informal and formal EEO process, the University knew of Plaintiff's participation in protected EEO activity before subjecting him to the aforementioned adverse actions.

68.     As a result of Plaintiff being routinely singled out than younger similarly situated University employees, the Department has created a climate of fear and intimidation for Plaintiff and any other employee.

69.     The adverse treatment Plaintiff was subjected to was noticed by his co-workers.

70.     The adverse treatment that Plaintiff was being subjected to by the Department was in front of and obvious to his co-workers.

71.     As a direct and proximate cause of the Department's conduct alleged in this Complaint, Plaintiff suffered and continues for suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

72.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.     Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

b.     Declaratory and injunctive relief;

11

c.   Order the Defendant to institute a policy and procedure to be implemented against discrimination;

d.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

e.   Supervisory training for the supervisors at issue herein; and

f.   Such other and further relief as this Court deems just and proper.

**COUNT III**
**Age Discrimination in Employment Act of 1967,**
**29 U.S.C. § 621 *et seq*.**
**(Hostile Work Environment)**

73.   Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

74.   As a result of Plaintiff's protected status and participation in protected activity, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

75.   Plaintiff was regularly and continually subjected to harassing conduct that included the adverse actions complained of in this Complaint, which created a hostile and abusive work environment.

76.   Plaintiff believes that he was subjected to a hostile work environment based on his age (DOB: xx-xx-1963) and because of his engagement in protected EEO activity.

77.   Defendant's unlawful conduct was unwelcome.

78.   Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

79.     Plaintiff was subjected to harassment because his age (DOB: xx-xx-1963) and because of his engagement in protected EEO activity, and the harassment unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

80.     Defendant knew or should have known of the harassment.  Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

81.     By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

82.     As a direct and proximate cause of the Department's conduct alleged in this Complaint, Plaintiff suffered and continues for suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

83.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.     Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

b.     Declaratory and injunctive relief;

13

c.    Order the Defendant to institute a policy and procedure to be implemented against discrimination;

d.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

e.    Supervisory training for the supervisors at issue herein; and

f.    Such other and further relief as this Court deems just and proper.

## COUNT IV
### (Constructive Discharge)

84.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

85.    Defendant deliberately and intentionally created a work environment that was hostile to employees, including Plaintiff, who were over the age of 40 and/or asserted their EEO rights.

86.    Defendant's aforementioned deliberate and unlawful discriminatory and retaliatory conduct, which includes, but is not limited to, not providing a performance evaluation, targeting Plaintiff, unfairly scrutinizing his work, and providing him with Notice of Proposed Termination, created an intolerable environment which made it necessary for Plaintiff to resign a position he desired.

87.    Plaintiff did not leave his employment with the Defendant on his own accord.

88.    Under the working conditions mentioned in this Complaint that Plaintiff experienced, a reasonable person would have been compelled to resign.

89.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his age and/or his participation and opposition to Defendant's discriminatory conduct.

14

90.     Defendant is directly liable for the discriminatory acts or omissions of its respective agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

91.     As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered and continues for suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

92.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Defendant's treatment and actions were ongoing.

93.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

    a.     Award compensatory damages in excess of Two Hundred Thousand Dollars ($200,000.00);

    b.     Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

    c.     Award reasonable attorney fees, costs and expenses incurred for this action;

    d.     Declaratory and injunctive relief;

e.    Order the Defendant to institute a policy and procedure to be implemented against discrimination;

f.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g.    Supervisory training for the supervisors at issue herein; and

h.    Such other and further relief as this Court deems just and proper.

## COUNT V
**Equitable Relief**

94.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

95.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of the Department and could result in further illegal actions on the party of the Department, by and through its agents, servants and employees.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.    Order the Defendant to institute a policy and procedure to be implemented against discrimination;

b.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.    Supervisory training for the supervisors at issue herein; and

d.    Such other and further relief as this Court deems just and proper.

16

## JURY DEMAND

96.    Plaintiff demands a trial by jury on all triable issues set forth herein.


                              Respectfully submitted,


                      By:    _donna williams ruck /rm_____

                              DONNA WILLIAMS RUCKER
                                 (D.C. Bar No. 446713)
                              RUCKER & ASSOCIATES, P.C.
                              888 Sixteenth Street, N.W., Suite 800
                              Washington, DC 20006
                              Office: (202) 349-9830
                              Facsimile: (202) 355-1399
                              Email: drucker@ruckerlawpc.com


August 9, 2013                Counsel for Plaintiff